IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| GEORGE MORGAN, § | |
| § | |
| Plaintiff § | |
| § | |
| v. § | Civil Action No. 3:10-CV-0167-BH |
| § | |
| MICHAEL J. ASTRUE, § | |
| Commissioner of Social Security, § | |
| § | |
| Defendant. § | |

**MEMORANDUM OPINION AND ORDER**

Pursuant to the consent of the parties and the District Court's *Order of Reassignment*, dated March 12, 2010, this case has been transferred to the undersigned United States Magistrate Judge for the conduct of all further proceedings and the entry of judgment in accordance with 28 U.S.C. § 636(c). Before the Court are *Plaintiff's Motion for Summary Judgment*, filed April 8, 2010, and *Defendant's Motion for Summary Judgment*, filed June 4, 2010. Based on the relevant filings, evidence, and applicable law, Plaintiff's motion is **GRANTED,** Defendant's motion is **DENIED**, and the case is remanded to the Commissioner for further proceedings.

**I. BACKGROUND**[1]

**A.    Procedural History**

George Morgan ("Plaintiff") seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying his claim for disability benefits under Title XVI of the Social Security Act. On January 13, 2006, he filed for supplementary security income, claiming

---

[1] The following background comes from the transcript of the administrative proceedings, which is designated as "Tr."

that he had been disabled since November 6, 2005 due to triple heart bypass and high blood pressure. (Tr. at 12, 104, 118.) His application was denied initially and upon reconsideration. (Tr. at 63-66, 69-71.) Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 72.) He personally appeared and testified at a hearing held on May 8, 2008. (Tr. at 16-17.) On May 30, 2008, the ALJ issued his decision finding Plaintiff not disabled. (Tr. at 10-15.) On December 4, 2009, the Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner. (Tr. at 1.) On January 28, 2010, Plaintiff timely appealed the Commissioner's decision to the United States District Court pursuant to 42 U.S.C. § 405(g).

**B.    Factual History**

    **1.    Age, Education, and Work Experience**

Plaintiff was born on August 5, 1951 and was 56 years old at the time of the hearing before the ALJ. (Tr. at 21, 104.) He has not completed high school but has a GED. (Tr. at 22.) His past relevant work includes work as a bus cleaner and a pizza delivery person, and he last worked in 2005. (Tr. at 14, 43-44, 118.)

    **2.    Medical Evidence**

Plaintiff's relevant medical evidence shows that Plaintiff was hospitalized for anginal chest pains in March of 2005. (Tr. at 164, 166.) He was noted to be obese (Tr. at 164, 167, 170), and was diagnosed with acute myocardial infarction and coronary artery disease (Tr. at 171, 174, 225). He subsequently underwent a triple coronary artery bypass (Tr. at 204) followed by an exercise routine and cardiac rehabilitation (336-37, 341-44). In August that year, Plaintiff was diagnosed with a knee strain. (Tr. at 218-19.)

On February 20, 2006, Dr. Narendra A. Patel, M.D., examined Plaintiff in consultation with the Disability Determination Services. (Tr. at 240.) Plaintiff reported that his post-operative course had been non-eventful, and denied any cardiovascular complications. (*Id.*) He reported occasional left-sided sharp pains lasting one minute and going away within ten to fifteen minutes upon rest. (*Id.*) Dr. Patel noted that Plaintiff could perform personal hygiene, walk four to five blocks, stand for thirty to forty-five minutes, sit for several hours, climb one flight of stairs, lift twenty-five pounds, handle objects, do minimal basic household chores like sweeping his room and vacuuming, and bend and squat. (*Id.*) He noted, however, that Plaintiff became short of breath when climbing stairs, and dizzy when bending and squatting. (*Id.*) Dr. Patel reported that Plaintiff had localized tenderness at the left parasternal rib joints, but there was no murmur or gallop in the heart. (Tr. at 241.) He noted that Plaintiff had normal range of motion in his hips and knees. (Tr. at 242-43.) He diagnosed Plaintiff with coronary artery disease, status post coronary artery bypass graft, and hyperlipidemia, and noted that he was morbidly obese and a chain smoker. (Tr. at 243.)

On February 27, 2006, Dr. John Durfor, M.D., conducted an RFC assessment of Plaintiff, and opined that Plaintiff could occasionally lift or carry fifty pounds, could frequently lift or carry twenty-five pounds, could sit, stand, and walk with normal breaks for a total of six hours in an eight-hour workday. (Tr. at 247-48, 254.) He found no postural limitations in climbing, balancing, stooping, kneeling, crouching, and crawling. (Tr. at 249.) On August 2, 2006, Dr. Kelvin Samaratunga, M., affirmed Dr. Durfor's RFC assessment. (Tr. at 269.)

In July of 2006, Plaintiff was hospitalized again for an episode of chest pain, nausea, and vomiting. (Tr. at 275.) He reported getting hot and dehydrated while working outdoors in a carnival. (*Id.*) He was diagnosed with acute renal failure, most likely due to dehydration and possibly due to rhabdomyolysis. (Tr. at 276.) Hospital records noted that Plaintiff was homeless,

had not been eating and drinking regularly, and had lost his medications. (Tr. at 293.) They also noted that Plaintiff was obese. (Tr. at 299). A renal ultrasound conducted during the hospitalization did not reveal any abnormalities in his kidneys. (Tr. at 288-89.)

On January 23, 2007, Plaintiff was incarcerated for violating a term of probation. (Tr. at 22.) A March 2007 health report from the Texas Department of Criminal Justice ("TDCJ"), signed by Dr. Regan, M.D., noted that Plaintiff was restricted to a lower bunk in prison, and was restricted from walking more than three hundred yards, lifting more than twenty pounds, and climbing. (Tr. at 467.) Another report from Correctional Managed Care at the TDCJ ("CMC") noted that Plaintiff complained of dizziness and headache in July of 2007, and was instructed to increase his fluid intake to relieve possible dehydration. (Tr. at 451-54.) CMC records from September 2007 reported that Plaintiff requested a lower bunk because of pain in both legs and chronic intermittent right hip pain that he had previously treated with ibuprofen. (Tr. at 446, 449.) Plaintiff had a limited range of motion in both lower extremities, his movement and gait were guarded, and he sat with difficulty. (Tr. at 446-47.) The treatment plan included medication, cold packs, warm moist heat, and instructions to restrict physical activity and elevate extremities above the heart as much as possible. (Tr. at 447-48.)

Another TDCJ health summary, dated September 24, 2007, and signed by Dr. Abbas Khoshdel, M.D., restricted Plaintiff to the ground floor and a lower bunk, and restricted him from walking more than three hundred yards, lifting more than twenty pounds, and climbing. (Tr. at 445.) Dr. Khoshdel also recommended that he be medically unassigned from work duty. (*Id.*) That same month, Dr. Khoshdel permanently assigned him to a low row due to severe coronary artery disease, obesity, and diabetes. (Tr. at 422.) On October 12, 2007, Dr. Khoshdel noted that Plaintiff had no episodes of hypoglycemia, was compliant with his medication and diet, and was doing well. (Tr.

- 4 -

at 418.)  He also noted that Plaintiff's diabetes was non-insulin dependent and could be controlled by medication and diet.  (Tr. at 419, 421.)

On February 1, 2008, Plaintiff complained to CMC that he had constant hip pain that was less relieved by ibuprofen than in the past.  (Tr. at 435.)  A nurse noted stiff joints, a full range of motion, and normal movement, gait, and posture.  (Tr. at 435-36.)  She instructed him to elevate his extremities above the heart as much as possible, and to limit his physical activity.  (Tr. at 436.)  Later that month, he complained of chest pain at a pain level of 4/10 and reported a tingling feeling in his chest.  (Tr. at 432.)  CMC records noted that he had taken a nitroglycerine with relief.  (Tr. at 433.)  They also noted that Plaintiff had an abnormal EKG and had run out of his medication the previous week.  (Tr. at 432-33.)  The following month, CMC records noted that Plaintiff took nitroglycerine once a week and had good diabetic control.  (Tr. at 599.)  In May 2008, Plaintiff reported to a CMC nurse that he felt dizzy and had sharp chest pains while out in the rec yard.  (Tr. at 584.)

### 3.    Hearing Testimony

The ALJ held a hearing on May 8, 2008.  (Tr. at 16).  Plaintiff appeared personally and was represented by an attorney.  *Id.*

#### a. Plaintiff's Testimony

Plaintiff testified that he had been incarcerated since January 23, 2007, and was not working. (Tr. at 22.)  He had been cleaning buses for about two years before his bypass in March 2005.  (Tr. at 23.)  After he had his surgery, he tried to clean buses part-time but could not do it for more than a couple of months.  (Tr. at 23-24.)  He stated that he probably could have worked there full-time. (Tr. at 32.)  He worked inside the buses with an air hose to blow the trash out, used a rag to wash the windows, and used a putty knife to scrape gum from the floor.  (Tr. at 27-28.)  He was working

- 5 -

as a bus-cleaner part-time when he got arrested for parole revocation due to a failure to report his address.  (Tr. at 28-29.)  He stated that he did not work while incarcerated because the prison authorities did not have a job that he could handle.  (Tr. at 40-41.)  He rested during the day and spent about three and a half hours of an eight-hour day lying down.  (Tr. at 41.)

Concerning his physical impairments, Plaintiff testified that he had high blood pressure and diabetes and took medication to control them.  (Tr. at 26-27.)  He had a bad hip and probably arthritis.  (Tr. at 27.)  He also had problems with his shoulder and knee.  (Tr. at 36.)  He suffered constant pain after the bypass and got dizzy when he exerted himself.  (Tr. at 25.)  As to his physical limitations, Plaintiff testified that he could not sit, stand, or walk for prolonged periods of time.  (Tr. at 26.)  He could make up to two laps around the yard but would get dizzy and weak, and it would take about ten minutes to make both laps, and he could not make them without taking breaks to sit down.  (Tr. at 26, 38.)  He probably could lift fifty pounds for a little while but had never tried it and thought it would be hard to do.  (Tr. at 33, 39.)  He could lift twenty pounds only once or twice every hour.  (Tr. at 40.)  He only had to carry about five to ten pounds when he used to clean bus exteriors.  (Tr. at 33.)  He did not have trouble reaching above his head and could climb stairs slowly from one floor to the next.  (Tr. at 37.)  He could not work at a job where he was on his feet most of the eight-hour day with just a break every two hours. (Tr. at 35.)

### b. *Vocational Expert's Testimony*

A vocational expert ("VE") also testified at the hearing.  (Tr. at 41-47.)  The VE testified that Plaintiff's past relevant work constituting substantial gainful activity included his jobs as an exterior bus cleaner (unskilled and medium), interior bus cleaner (unskilled and light), and pizza delivery person (low level semi-skilled, SVP 3, and light).  (Tr. at 43-44.)

The ALJ asked the VE to assume a hypothetical person with Plaintiff's age, education, and

work experience who could occasionally lift and carry fifty pounds; frequently lift and carry twenty-five pounds; sit, stand, or walk with normal breaks about six-hours in an eight-hour workday; and had no limitations with regard to pushing, pulling, or operation of hand or foot controls. (Tr. at 44.) The ALJ then asked the VE to opine whether such a person would be able to perform Plaintiff's past relevant work. (*Id.*) The VE testified that the hypothetical individual would be able to perform both bus cleaning jobs. (*Id.*) The ALJ then modified the hypothetical individual's RFC to occasionally carrying twenty pounds and frequently carrying ten pounds; the VE concluded that such an individual could perform interior bus cleaning. (Tr. at 45.) When the ALJ modified the RFC to occasionally lifting and carrying ten pounds, frequently carrying and lifting less than ten pounds, and standing and walking for two hours in an eight hour workday, the VE testified that such an RFC would preclude all of Plaintiff's past relevant work. (*Id.*)

Upon cross-examination by Plaintiff's attorney, the VE testified that the individual from the second hypothetical would not be able to maintain any job if he had general fatigue and shortness of breath to the point that he could not walk more than about three hundred yards without sitting down to rest, could not stand for more than thirty minutes at a time, could only climb one flight of stairs slowly, and had difficulty balancing. (Tr. at 46-47.) The VE also opined that an individual's need to rest three hours in an eight-hour workday would preclude all employment. (Tr. at 47.)

**C.    ALJ's Findings**

The ALJ denied Plaintiff's application for benefits by written opinion issued on May 30, 2008. (Tr. at 10-15.) He found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (Tr. at 12, ¶ 1.) He also found that Plaintiff suffered from the severe impairments of coronary artery disease status post myocardial infarction, status post coronary artery bypass graft, hypertension, obesity and diabetes mellitus, but concluded that these impairments did

- 7 -

not meet or equal a listed impairment. (Tr. at 12, ¶¶ 2, 3.) The ALJ limited Plaintiff's RFC to a full range of medium work, finding that he could lift or carry fifty pounds occasionally and twenty-five pounds frequently, and could sit, stand or, walk for six hours in an eight-hour workday. (Tr. at 13, ¶ 4.) He found that Plaintiff's RFC would allow him to perform his past relevant work as a bus cleaner. (Tr. at 14, ¶ 5.) He concluded that Plaintiff had bot been disabled since January 3, 2006, the date of his disability application. (Tr. at 15, ¶ 6.)

## II. ANALYSIS

**A.** **Legal Standards**

### 1. Standard of Review

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. § 405(g), 1383(C)(3). Substantial evidence is defined as more than a scintilla, less than a preponderance, and as being such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). In applying the substantial evidence standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236. A finding of no substantial evidence is appropriate only if there is a conspicuous absence of credible evidentiary choices or contrary medical findings to support the Commissioner's decision. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

The scope of judicial review of a decision under the supplemental security income program is identical to that of a decision under the social security disability program. *Davis v. Heckler*, 759

F.2d 432, 435 (5th Cir. 1985).  Moreover, the relevant law and regulations governing the determination of disability under a claim for disability insurance benefits are identical to those governing the determination under a claim for supplemental security income.  *See id.*  Thus, the Court may rely on decisions in both areas without distinction in reviewing an ALJ's decision.  *See id.*

### 2. Disability Determination

To be entitled to social security benefits, a claimant must prove that he or she is disabled as defined by the Social Security Act.  *Leggett*, 67 F.3d at 563–64; *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988).  The definition of disability under the Social Security Act is "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled:

    1.    An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

    2.    An individual who does not have a "severe impairment" will not be found to be disabled.

    3.    An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

    4.    If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made.

    5.    If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be

performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. § 404.1520(b)-(f)). Under the first four steps of the analysis, the burden lies with the claimant to prove disability. *Leggett*, 67 F.3d at 564. The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id.* Once the claimant satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan*, 38 F.3d at 236. This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). A finding that a claimant is not disabled at any point in the five-step review is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

### 3. Standard for Finding of Entitlement to Benefits

Plaintiff asks the Court to reverse the Commissioner's decision and remand solely for calculation of benefits, and in the alternative, to remand for further proceedings. (P. Br. at 1, 16.)

When an ALJ's decision is not supported by substantial evidence, the case may be remanded "with the instruction to make an award if the record enables the court to determine definitively that the claimant is entitled to benefits." *Armstrong v. Astrue*, No. 1:08-CV-045-C, 2009 WL 3029772, *10 (N.D. Tex. Sept. 22, 2009) (adopting recommendation of Mag. J.). The claimant must carry "the very high burden of establishing 'disability without any doubt.'" *Id.* at *11 (citation omitted). Inconsistencies and unresolved issues in the record preclude an immediate award of benefits. *Wells v. Barnhart*, 127 F. App'x 717, 718 (5th Cir. 2005). The Commissioner, not the court, resolves evidentiary conflicts. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).

**B.**     **<u>Issues for Review</u>**

Plaintiff identifies the following issues for review:

(1)     Did the ALJ inadequately evaluate Morgan's obesity when he found it severe and mentioned two physician reports discussing obesity but did not include vocational limitations or discuss how obesity affects his other impairments;

(2)     Did the ALJ improperly fail to discuss Plaintiff's ability to maintain competitive employment when he adopted a state agency opinion limiting him to medium work but failed to discuss Plaintiff's testimony regarding the duties of his past relevant work;

(3)     Did the ALJ inadequately evaluate Dr. Khoshdel's treating opinion when he failed to evaluate Dr. Khoshdel's opinion under the six-factor criteria of 20 C.F.R. § 416.927(d) and did not discuss Dr. Khoshdel's statement that Plaintiff's restrictions were caused by his obesity, coronary artery disease, and diabetes?

(Pl. Br. at 1-2.)

**C.**     **<u>Issue Three: Treating Physician's Opinion</u>**[2]

Plaintiff complains that the ALJ erred by failing to give proper weight to Dr. Khoshdel's opinion concerning his physical limitations. (P. Br. at 13-16.) Plaintiff argues that Dr. Khoshdel's opinion, as a treating physician's opinion, was entitled to considerable weight, if not controlling weight, in determining disability, but the ALJ did not give "any" consideration to his opinion. (*Id.*)

The Commissioner is entrusted to make determinations regarding disability, including weighing inconsistent evidence. 20 C.F.R. § 404.1527(c)(2). Every medical opinion is evaluated regardless of its source but the Commissioner generally gives greater weight to opinions from a treating physician. 20 C.F.R. § 404.1527(d). In fact, when "a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable

---

[2] Plaintiff's first two issues are premised in part on the restrictions recognized by the treating physician's opinion, which is the subject of the third issue. Because the first two issues are impacted by the disposition of the third issue, the Court addresses it first. (P. Br. at 9-10, 11.)

clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence," the Commissioner must give such an opinion controlling weight. *Id.* If controlling weight is not given to a treating source's opinion, the Commissioner considers six factors in deciding the weight given to each medical opinion: (1) whether the source examined the claimant or not; (2) whether the source treated the claimant; (3) the medical signs and laboratory findings that support the given opinion; (4) the consistency of the opinion with the record as a whole; (5) whether the opinion is made by a specialist or non-specialist; and (6) any other factor which "tend[s] to support or contradict the opinion." *See id.* § 404.1527(d)(1)-(6).

While an ALJ should afford considerable weight to opinions and diagnoses of treating physicians when determining disability, sole responsibility for this determination rests with the ALJ. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). If evidence supports a contrary conclusion, an opinion of any physician may be rejected. *Id.* A treating physician's opinion may also be given little or no weight when good cause exists, such as "where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Id.* at 455-56. Nevertheless, "absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)." *Id.* at 453. A detailed analysis is unnecessary, however, when "there is competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another" or when the ALJ has weighed "the treating physician's opinion on disability against the medical opinion of other physicians who have treated or examined the claimant and have specific medical

bases for a contrary opinion." *Id*. at 458.

Here, the medical record consists of opinions from Dr. Durfor, a State Agency Medical Consultant, Dr. Patel, a state agency consulting examiner, Dr. Regan, an examining if not treating physician, and Dr. Khoshdel, a treating physician. In 2007, Dr. Regan and Dr. Khoshdel both restricted Plaintiff to the ground floor and a lower bunk, and restricted him from walking more than three hundred yards, lifting more than twenty pounds, and climbing. (Tr. at 445, 467.) Dr. Khoshdel permanently assigned him to a lower bunk reasoning that he had severe coronary artery disease, obesity, and diabetes (Tr. at 422), and recommended that he be medically unassigned from work duty (Tr. at 445). These restrictions were consistent with medical findings that Plaintiff was obese (Tr. at 164, 167, 170, 243, 299, 422), had non insulin-dependent diabetes (419, 421), had a triple heart bypass followed by on-going chest pains, and had musculoskeletal problems such as stiff joints, right knee pain, and right hip pain. (Tr. at 218-19, 435-46, 447.) Objective data in the CMC records showed that Plaintiff had a limited range of motion in both lower extremities, his movement and gait were guarded, and he sat with difficulty. (Tr. at 446-47.) Dr. Patel, a consultative examiner, also noted that Plaintiff became short of breath when climbing stairs, and dizzy when bending and squatting. (Tr. at 240.)

Despite this evidence, the ALJ limited Plaintiff's RFC to a full range of medium work, finding that he could lift or carry fifty pounds occasionally and twenty-five pounds frequently, and could sit, stand, or walk for six hours in an eight-hour workday. (Tr. at 13, ¶ 4.) He specifically relied on Dr. Patel's opinion – rendered more than a year earlier than Dr. Khoshdel's opinion – that Plaintiff had no cardiovascular complications after the coronary artery bypass (Tr. at 13), and gave significant weight to a state agency medical opinion that Plaintiff could perform medium work

activities (Tr. at 14). At no point in his narrative discussion did the ALJ mention Dr. Khoshdel or any of his medical opinions, weigh his opinion against another medical opinion, find that one opinion was more well-founded than the other, or attempt to show good cause for rejecting that opinion. He dismissed all of the CMC records by a simple statement that "any prison restrictions appear based on claimant's subjective complaints." (Tr. at 14.) When an ALJ fails to consider all evidence from a treating source and fails to present good cause for rejecting it, the matter should be remanded for further consideration. *See Myers v. Apfel*, 238 F.3d 617, 621-22 (5th Cir. 2002); *Newton v. Apfel*, 209 F.3d 448, 455-58 (5th Cir. 2000). An "ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position." *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000).

The Commissioner argues that Dr. Khoshdel's opinion was medically unsupported and was controverted by the other medical evidence of record. (D. Br. at 10-12.) An ALJ's decision "must stand or fall with the reasons set forth in [his] decision, as adopted by the Appeals Council", however. *Newton*, 209 F.3d at 455. It is well established that a court may only affirm the ALJ's decision "on the grounds which he stated for doing so." *Cole v. Barnhart*, 288 F.3d 149, 151 (5th Cir. 2002) (per curiam). The ALJ did not mention Dr. Khoshdel's opinion, much less weigh the opinion against other medical opinions of record or provide good cause for rejecting it. This failure constitutes legal error and requires remand. *See Waters v. Massanari*, No. 4:00-CV-1656-Y, 2001 WL 1143149, at *11 (N.D. Tex. Sept 24, 2001) (holding that the Commissioner had conceded "legal error" when the ALJ improperly evaluated opinions of a treating physician). Since remand is required on this issue, and its determination could impact the remaining issues, the Court does not consider them.

### III.   CONCLUSION

*Plaintiff's Motion for Summary Judgment* is **GRANTED**, *Defendant's Motion for Summary Judgment* is **DENIED**, and the decision of the Commissioner is **REVERSED** and the case is **REMANDED** for reconsideration.

**SO ORDERED**, on this 7th day of July, 2010.

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE